# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| NTSF Seafoods Joint Stock Company,<br><br>Plaintiff,<br><br>v.<br><br>United States,<br><br>Defendant,<br><br>and<br><br>Catfish Farmers of America, *et al.*,<br><br>Defendant-Intervenors. | )<br>)<br>)    Ct. No. 20-00104<br>)<br>)    **NON-CONFIDENTIAL**<br>)    **VERSION**<br>)<br>)<br>)<br>)<br>)<br>)    Business Proprietary<br>)    Information Removed<br>)    from Brackets on Pages 7,<br>)    11, 12, 13, 15, 18, and 19<br>)<br>)<br>) |

## RESPONSE BRIEF OF THE CATFISH FARMERS OF AMERICA AND INDIVIDUAL U.S. CATFISH PROCESSORS

Jonathan M. Zielinski
James R. Cannon, Jr.
**Cassidy Levy Kent (USA) llp**
900 19th Street NW, Suite 400
Washington, DC 20006
T: (202) 787-5507
F: (202) 567-2301
E-mail:  jzielinski@cassidylevy.com

*Counsel to the Catfish Farmers of America, et al.*

Dated:  April 12, 2021

NON-CONFIDENTIAL VERSION

Table of Contents

I.    Statement Pursuant to Rule 56.2(c)(1) ............................................... 2

    A. The Administrative Determination Under Review ........................... 2

    B. Issues Presented for Review and Summary of Argument.................. 3

II.    Argument .......................................................................................... 4

    A. Standard of Review ........................................................................ 4

    B. Commerce Properly Relied Upon Partial Adverse Facts Available Because NTSF Failed to Provide Necessary Farming Factors of Production Information ................................................................... 6

        *1. Commerce Required that NTSF Report All Factors of Production Involved in the Production of the Merchandise Under Consideration, And NTSF Admitted that its Failure to Report NTSF Vinh Long's Farming Factor Data was a Failure to Report This Requested Information .......................................................... 9*

        *2. Commerce Adequately Explained Why the Missing Farming Factors Data were Necessary ....................................................... 12*

        *3. Commerce Correctly Applied the Highest Reported Farming Factors of Production for Each Farming Category as Partial Adverse Facts Available ............................................................. 14*

    C. Commerce Correctly Rejected NTSF's Untimely Allegation of Double Counting ............................................................................ 16

III.    Conclusion ...................................................................................... 21

NON-CONFIDENTIAL VERSION

Table of Authorities

Page(s)

Statutes

19 U.S.C. § 1516a(b)(1)(B) ...................................................................................4

19 U.S.C. § 1677e(a) .........................................................................................12

19 U.S.C. § 1677e(b) .........................................................................................15

28 U.S.C. § 2639(a)(1) .........................................................................................5

Regulations

19 C.F.R. § 351.309(c)(2) ...................................................................................17

19 C.F.R. § 351.224 ......................................................................................17, 20

19 C.F.R. § 351.224(f) .......................................................................................20

19 C.F.R. § 351.224(g) .......................................................................................20

Court Decisions

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339 (Fed. Cir. 2015) ...............................................................................................................14

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 287 F. Supp. 3d 1361 (Ct. Int'l Trade 2018) ...............................................................................7

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 333 F. Supp. 3d 1381 (Ct. Int'l Trade 2018) ...............................................................................7

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 179 F. Supp. 3d 1256 (Ct. Int'l Trade 2016) ...............................................................................7

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778 (1984) ................................................................................5

*Clearon Corp. v. United States*, 474 F. Supp. 1339 (Ct. Int'l Trade 2020) ...........12

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) .................20

*Consol. Edison Corp. v. NLRB*, 305 U.S. 197 (1938) .......................................... 4-5

*Goss Graphics Sys. v. United States*, 33 F. Supp. 2d 1082 (Ct. Int'l Trade 1998) ...5

*Motor Vehicle Mfrs. Ass'n of United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ............................................................................... 5-6

*Nakornthai Strip Mill Pub. Co. v. United States*, 587 F. Supp. 2d 1303 (Ct. Int'l Trade 2008) ...............................................................................21

*Nippon Steel & Sumitomo Metal Corp. v. United States*, 483 F. Supp. 3d 1214 (Ct. Int'l Trade 2020) ...............................................................................13

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ..................15

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) ............. 13-14

*Pakfood Pub. Co. v. United States*, 724 F. Supp. 2d 1327 (Ct. Int'l Trade 2010) .21

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990) .................14

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) .................... 20-21

United States v. Eurodif S.A., 555 U.S. 305 (2009) ...................................................5

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ...................................... 4-5

NON-CONFIDENTIAL VERSION

Administrative Decisions

*Certain Frozen Fish Fillets from the Socialist Republic of* Vietnam,
80 Fed. Reg. 2,394 (Dep't of Commerce Jan. 16, 2015) ..................................... 6-7

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
84 Fed. Reg. 56,420 (Dep't of Commerce Oct. 22, 2019) .............................*passim*

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
85 Fed. Reg. 23,756 (Dep't of Commerce Apr. 29, 2020) .............................*passim*

Other Materials

*Antidumping Duties; Countervailing Duties*,
62 Fed. Reg. 27,296 (Dep't of Commerce May 19, 1997) ...............................17, 19

Statement of Administrative Action Accompanying the URAA,
H.R. Doc. No. 103-316 (1994) ...……………………………………………........14

NON-CONFIDENTIAL VERSION

## <u>Glossary of Case-Specific Acronyms and Abbreviations</u>

| Acronyms and Abbreviations | Terms |
|---|---|
| **CFA** | Catfish Farmers of America, *et al.* |
| **CONNUM** | Control number |
| ***Final Results*** | *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 23,756 (Dep't of Commerce Apr. 29, 2020) |
| **IDM** | Issues and Decision Memorandum |
| **NTSF** | NTSF Seafoods Joint Stock Company |
| ***Preliminary Results*** | *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Preliminary Results of the Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2017-2018*, 84 Fed. Reg. 56,420 (Dep't of Commerce Oct. 22, 2019), and accompanying unpublished Preliminary Decision Memorandum |

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| NTSF SEAFOODS JOINT STOCK COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>CATFISH FARMERS OF AMERICA, *ET AL.*, )<br><br>Defendant-<br>Intervenors. )<br><br> ) | Ct. No. 20-00104<br><br>**NON-CONFIDENTIAL<br>VERSION** |

## RESPONSE BRIEF OF THE CATFISH FARMERS OF AMERICA AND INDIVIDUAL U.S. CATFISH PROCESSORS

The Catfish Farmers of America and individual U.S. catfish processors

America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc.,

Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride

Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia

Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc.

(collectively, "CFA"), Defendant-Intervenors, herein respond to the motion for

judgement and supporting memorandum filed by Plaintiff NTSF Seafoods Joint

Stock Company ("NTSF").  As explained below, the Court should deny NTSF's Rule 56.2 Motion for Judgment on the Agency Record (Nov. 6, 2020) ("*Plaintiff's Br.*"), ECF No. 39, because the determinations challenged by NTSF are reasonable, supported by substantial record evidence, and are otherwise in accordance with law.

In an effort to conserve resources and avoid repetition with the arguments of Defendant, the United States, this Response Brief does not address all arguments raised by NTSF and does not repeat all arguments raised by the Defendant in its Consolidated Response Brief (Mar. 31, 2021) ("*Defendant's Br.*"), ECF No. 49 at 50-71.  We support all such arguments of the Defendant.[1]

I.   STATEMENT PURSUANT TO RULE 56.2(C)(1)

A.   The Administrative Determination Under Review

NTSF contests certain findings in the *Final Results* of Commerce's fifteenth administrative review of the antidumping duty order covering Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, issued by the U.S. Department of Commerce ("Commerce") and published as *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 85 Fed. Reg. 23,756 (Dep't of Commerce Apr. 29,

---

[1] However, CFA disagrees with the Defendant's arguments in opposition to our claims in consolidated appeal 20-105, and will address those arguments in our Reply Brief.

2020) (fin. res. of admin. rev.) ("*Final Results*"), Appx1001-1003 and

accompanying unpublished Issues and Decision Memorandum ("Final IDM"),

Appx1005-1039.

      B.    <u>Issues Presented for Review and Summary of Argument</u>

1.    *Whether Commerce correctly applied partial adverse facts available to*

*missing farming factors of production when NTSF admitted it failed to provide the*

*requested information and that information was necessary to calculate an accurate*

*dumping margin*.  Commerce requested that NTSF report all factors of production

used in producing one unit of the subject merchandise, which includes the factors

of production used to farm whole live fish.  NTSF indicated to Commerce that it

reported all factors of production for both itself and its affiliate, NTSF Ving Long.

However, near the end of the administrative review NTSF admitted to Commerce

that it had failed to report NTSF Vinh Long's farming factors of production.

Commerce reasonably determined that NTSF failed to provide necessary

information when requested and applied partial adverse facts available.

Commerce's determination is supported by substantial evidence and is in

accordance with law because Commerce requested the farming factors of

production, those factors of production were necessary, and Commerce reasonably

applied a correct adverse facts available plug to fill the gap left by the missing information.

2.  *Whether Commerce correctly rejected NTSF's ministerial error allegation when the alleged error was evident in Commerce's preliminary results and NTSF failed to include it in its case brief.*  Commerce regulations require that all alleged errors present in a preliminary decision be raised in parties' case briefs.  Those regulations also indicate that, after the final results, Commerce may address "ministerial errors" that it made and that did not exist previously.  NTSF alleged a ministerial error after the *Final Results*.  Commerce rejected NTSF's submission because the alleged error was present in the *Preliminary Results* and NTSF failed to raise it in its case brief.  Commerce's determination is in accordance with its regulations.

II.   ARGUMENT

A.   Standard of Review

This Court shall sustain "any determination, finding, or conclusion found" by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Universal Camera Corp. v. NLRB*, 340 U.S.

474, 477 (1951) (quoting *Consol. Edison Corp. v. NLRB*, 305 U.S. 197, 229 (1938)).

Commerce has "discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor in its analysis." *Goss Graphics Sys. v. United States*, 33 F. Supp. 2d 1082, 1100 (Ct. Int'l Trade 1998), *aff'd*, 216 F.3d 1357 (Fed. Cir. 2000).  Commerce's determination is "presumed to be correct," and the burden of proving otherwise rests upon the challenging party.  28 U.S.C. § 2639(a)(1).

In assessing the lawfulness of an agency's construction of a statute, the Court is guided by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778 (1984) ("*Chevron*").  Under *Chevron*, an agency's "interpretation {of a statute} governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009).  As the Supreme Court has explained, '"{t}he whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency."' *Id.*

Ultimately, given reasonable evidence to support Commerce's findings, a reviewing court should not substitute its judgment for that of the agency.  *Motor*

*Vehicle Mfrs. Ass'n of United States v. State Farm Mut. Auto. Ins. Co*., 463 U.S.

29, 43 (1983).

      B.      <u>Commerce Properly Relied Upon Partial Adverse Facts Available</u>
             <u>Because NTSF Failed to Provide Necessary Farming Factors of</u>
             <u>Production Information</u>

In cases involving non-market economies, such as Vietnam, Commerce

requires foreign producers to report the factors of production used to produce one

unit of the merchandise under consideration.  Initial AD Questionnaire at D-1 to D-

9, Appx1119-1127.  Commerce will then compare the cost of producing that unit

to the equivalent U.S. sales prices of subject merchandise to determine the

dumping margin.

Here, to produce the merchandise under consideration, the Vietnamese

industry must purchase whole live pangasius fish or it must raise those fish from

fingerlings.  Thus, among the crucial factors of production necessary in this case

are the "farming factors" that go into raising whole live fish (*e.g.*, fingerlings, fish

feed, nutrition, and medicine).  Accurate farming factors and whole fish usage

reporting is crucial for Commerce to calculate an accurate dumping margin.

Indeed, Commerce has explained repeatedly that farming factors and whole fish

are key raw material inputs that must be reported accurately.  *See*, *e.g.*, *Certain*

*Frozen Fish Fillets from the Socialist Republic of Vietnam*, 80 Fed. Reg. 2,394

(Dep't of Commerce Jan. 16, 2015) (fin. res. of admin. rev.) and accompanying

IDM at Comments I.C. and IV.  This Court has also recognized the necessity of

reporting accurate farming factors and whole fish.  *See*, *e.g.*, *An Giang Fisheries

Imp. & Exp. Joint Stock Co. v. United States*, 287 F. Supp. 3d 1361, 1371-72 (Ct.

Int'l Trade 2018) (where the Court upheld Commerce's use of partial facts

available to ensure respondent's farming factors of production more accurately

reflected the cost of producing one unit of merchandise under consideration

(remanded for further explanation of the partial facts available calculation), *aff'd* in

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 333 F. Supp. 3d

1381 (Ct. Int'l Trade 2018)); *An Giang Fisheries Imp. & Exp. Joint Stock Co. v.

United States*, 179 F. Supp. 3d 1256, 1267-75 (Ct. Int'l Trade 2016).

As it has requested of all respondents for many years in this proceeding,

Commerce requested that NTSF report factors of production information related to

producing the merchandise under consideration.  *See* Initial AD Questionnaire at

D-1 to D-9, Appx1119-1127.  NTSF used whole live fish grown by its affiliate,

NTSF Vinh Long, to produce merchandise under consideration, but failed to report

the farming factors of production for that entity.  *See* Verification Report at 16-17,

Appx102468-102469.  *See also* NTSF Sec D QR at D-13, Exhibit D-10,

Appx89854, Appx89965-89980 (reporting factors for whole live fish used by

NTSF [                              ] to produce merchandise under consideration);

NTSF Supp QR at Exhibit Q-92, Appx93991-93999.  Recognizing this failure, NTSF attempted to cure it too late in the proceeding, *i.e.*, at NTSF's verification. *See* Final IDM at 22, Appx1026; *see also* Verification Report at 16-17, Appx102468-102469.  Commerce rejected NTSF's new information and applied partial adverse facts available to fill the gap left by the missing data.  Final IDM at 22-23, Appx1026-1027.

NTSF does not dispute that it failed to timely provide NTSF Ving Long's farming factor of production data, and does not challenge Commerce's rejection of those data at verification.  Instead, NTSF argues that Commerce was not permitted to apply adverse facts available to the missing data because 1) Commerce never requested that information, 2) the missing data were not "necessary," and 3) the selected adverse facts available plug was unreasonable.  *Plaintiff's Br.* at 19-33. As explained below, NTSF admitted to Commerce that it failed to provide requested information, the missing data were required for Commerce to determine the correct usage rate of the farming factors of production, and Commerce's adverse facts available plug was in accordance with law.

1. *Commerce Required that NTSF Report All Factors of
   Production Involved in the Production of the Merchandise
   Under Consideration, And NTSF Admitted that its Failure to
   Report NTSF Vinh Long's Farming Factor Data was a
   Failure to Report This Requested Information*

NTSF argues that Commerce did not request that NTSF report separately the

upstream farming factors of production used by its affiliate, NTSF Vinh Long, but

that Commerce only requested the factors of production from the facility that

produced the subject merchandise.  *Plaintiff's Br*. at 19-20.  NTSF contradicts the

record and its own actions during the proceeding.

*First*, Commerce's initial questionnaire requests as a matter of course that

parties report all factors of production used to produce the merchandise under

consideration, including factors sourced from other affiliated or unaffiliated

parties.  For example, Section A of Commerce's questionnaire requests that

respondents report all parties involved in every stage of the production of the

merchandise under consideration, including intermediary parties that produce

factors of production at an earlier stage.  Initial AD Questionnaire at A-8,

Appx1088.  Commerce asks this question specifically to identify parties that might

produce only a factor of production but not the merchandise under consideration,

and Commerce states clearly that a respondent should "be prepared to provide

factor of production information for each party listed, if requested by the

Department."  *Id*.  Similarly, as noted by the Defendant, Commerce requests in

Section D of its questionnaire that respondents report all factors of production for all models/product types.  *Defendant's Br.* at 55; *see also* Initial AD Questionnaire at D-7, Appx1125 (requiring respondents to "{r}eport each raw material used to produce a unit of the merchandise under consideration").  Indeed, as NTSF notes, Commerce's initial questionnaire requests that respondents report actual consumption of all factors of production and requires that, if a respondent is not reporting such factors using actual quantities consumed during the period of review, then the respondent should provide a detailed explanation for the selected methodology and why the methodology is the best way to accurately demonstrate the actual consumption rate.  *Plaintiff's Br.* at 20; *see also* Initial AD Questionnaire at D-2, Appx1120.

In response to Commerce's multiple requests, NTSF failed to report the farming factors of production for NTSF Vinh Long, and it did not provide an explanation for its failure to report actual consumption data.  To the contrary, NTSF indicated that its reporting included all factors of production for NTSF and NTSF Vinh Long.  *See* NTSF Sec D QR at D-3, Appx89844 ("The attached response contains the factors of production for NTSF and NTSF Vinh Long").  Thus, NTSF is wrong when it argues that Commerce did not request information regarding its affiliate's farming factors of production.  Instead, NTSF withheld this

information despite Commerce's requests, and Commerce only discovered these missing factors of production at verification.

*Second*, NTSF recognized that it failed to submit requested information when it admitted its failure to Commerce during verification. *See* Final IDM at 22, Appx1026 ("Regarding NTSF Vinh Long's farming factors, at verification, for the first time, NTSF informed us that it did not report the farming FOPs of its affiliated processor NTSF Vinh Long in the FOP database"). It is unreasonable for NTSF to now argue that Commerce never asked it for NTSF Vinh Long's farming factors of production when NTSF first told Commerce that its reporting included NTSF Vinh Long's factors of production, and then told Commerce during the underlying proceeding that it failed to report them and attempted to untimely add them to the record. Indeed, that NTSF reported [

]. *See*, *e.g.*, NTSF Sec D QR at Exhibit D-11, Appx89980-90020; NTSF Supp QR at Exhibit Q-92, Appx93991-93999.

*Third*, NTSF's position is unreasonable because it would lead to the absurd result of permitting respondents to avoid reporting factors of production by simply claiming they are used by an affiliate. Contrary to NTSF's claim, Commerce does not limit its factor of production requests to inputs consumed in the facility where

11.

the final stage of production occurs. *Plaintiff's Br.* at 20. Instead, it requires the reporting of all factors of production used at every stage to produce the merchandise under consideration because each factor represents a potential additional cost that is necessary to building the most accurate comparison unit possible. Allowing parties to remove cost variables from that build up would result in manipulation and less accurate margin calculations.

Therefore, the record indicates that Commerce requested, and NTSF knew it was required to report, NTSF Ving Long's farming factors of production.

### 2. *Commerce Adequately Explained Why the Missing Farming Factors Data were Necessary*

NTSF argues that the application of facts available to the missing NTSF Vinh Long data was not permissible under the statute because those data were not "necessary" for Commerce's calculation. *Plaintiff's Br.* at 22. Specifically, NTSF argues that the missing data overlapped with [            ] of NTSF's subject merchandise sales, *i.e.*, [                    ] to be "necessary." *Id.* at 21.

NTSF is wrong because Commerce decides what information is necessary, not the respondents, and it was prohibited from doing so by NTSF's failure to provide the requested farming factors of production. *See Clearon Corp. v. United States*, 474 F. Supp. 1339, 1341-42 (Ct. Int'l Trade 2020) (citing 19 U.S.C. § 1677e(a) and noting that, under adverse facts available statute, it is Commerce that

determines that "necessary information is not available on the record"); *see also*

*Nippon Steel & Sumitomo Metal Corp. v. United States*, 483 F. Supp. 3d 1214,

1227 (Ct. Int'l Trade 2020) (same).  As explained above, Commerce requested

information regarding all factors of production, and NTSF is not permitted to

withhold information because it believes it is not necessary.

Regardless, NTSF mischaracterizes the scope of its failure.  As Commerce

explained, the amount of overlap between the CONNUMs sold in the United States

and the finished product toll-produced using NTFS Vinh Long's fish is irrelevant

when valuing the farming factors because NTSF's reporting is not CONNUM-

specific at the farming factors stage.  Final IDM at 23, Appx1027.  That is, the

portion of [

] has no connection to the amount of

farming factors of production that go into each CONNUM.  Here, Commerce

determined that [          ] of NTSF's whole live fish harvest was affected by its

failure to report NTSF Vinh Long's farming factors, which is a significant and

"necessary" amount of missing information.  Verification Report at 17,

Appx102469.  Without this information, Commerce did not have the information

necessary to calculate NTSF's margin as accurately as possible, which, as the

Federal Circuit has previously recognized, is the entire purpose of the statute.

Final IDM at 22, Appx1026 (citing *NTN Bearing Corp. v. United States*, 74 F.3d

1204,1208 (Fed. Cir. 1995), quoting *Rhone Poulenc, Inc. v. United States*, 899

F.2d 1185, 1191 (Fed. Cir. 1990)).

> 3. *Commerce Correctly Applied the Highest Reported Farming Factors of Production for Each Farming Category as Partial Adverse Facts Available*

NTSF argues that Commerce's assignment, as partial adverse facts available,

of the highest reported consumption factor for each farming input is not supported

by substantial evidence because a more neutral plug was available, Commerce

incorrectly applied its chosen plug across all CONNUMs, and Commerce failed to

take into account information regarding the farming factors that NTSF failed to

report. *Plaintiff's Br.* at 23-26. NTSF's arguments contradict the purpose of

applying adverse facts available and the record.

The purpose of applying adverse facts available is to induce respondents to

cooperate in the future and to ensure that respondents do not obtain a more

favorable result by not cooperating. *Ad Hoc Shrimp Trade Action Comm. v.*

*United States*, 802 F.3d 1339, 1361 (Fed. Cir. 2015); *see also* Statement of

Administrative Action Accompanying the URAA ("SAA"), H.R. Doc. No. 103-

316, at 870 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199. As explained

above, NTSF knew it failed to provide requested information when it tried to

submit that information for the first time at verification. Consequently, Commerce

14.

determined correctly that NTSF failed to cooperate to the best of its ability because it had the information in its possession but did not provide it when requested. Final IDM at 23, Appx1027.  Commerce's determination to apply adverse facts available is consistent with the purpose of 19 U.S.C. § 1677e(b) because it is meant to ensure NTSF cooperates in the future and does not benefit from its failure.  *Id*.

Conversely, NTSF's argument that Commerce should have applied NTSF's farming factors of production to fill-in the NTSF Vinh Long data that it withheld misses the point of applying adverse facts available.  If Commerce were to apply a neutral plug, then NTSF would have no incentive to cooperate in the future.  Final IDM at 23, Appx1027 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)).  Indeed, NTSF and other respondents would be encouraged to withhold factor of production information when there is alternative, more favorable data already on the record.  This defeats the purpose of the statute.

NTSF's alternative argument that Commerce should have only applied adverse facts available to the [

] contradicts the record.  *Plaintiff's Br.* at 28-30.  As explained above, it was not possible to allocate accurately the farming factors to the merchandise under consideration on a CONNUM-specific basis because NTSF's CONNUM reporting began at the whole live fish stage. Therefore, Commerce reasonably applied the adverse farming factors across all

15.

CONNUMs, but weight-averaged to NTSF Vinh Long's portion of harvested whole fish.  Final Analysis Memorandum at 2, Appx102796.

Finally, NTSF's claim that Commerce was required to adapt its adverse inference based upon fingerling size and protein information that NTSF reported it used in its production is also unsupported by the record.  *Plaintiff's Br.* at 30-31. NTSF ignores that it was not NTSF's farming factor data that were missing from the record, it was NTSF Vinh Long's data that were missing.  Although Commerce noted that the missing factor data included "five sizes of fingerlings not present in the most recent factor of production {} database," it was impossible for Commerce to know which of these fingerlings were used to grow the fish consumed to make a particular CONNUM.  Verification Report at 17, Appx102469.  Therefore, when applying its partial adverse facts available plug to the missing farming factors of production, Commerce logically and correctly applied the highest values on the record.

C.  Commerce Correctly Rejected NTSF's Untimely Allegation of Double Counting

NTSF acknowledges that Commerce requires that "{c}omments concerning ministerial errors made in the preliminary results of a review should be included in a party's case brief."  *Plaintiff's Br.* at 41.  NTSF also acknowledges that ". . . Commerce's regulations require a party to present all arguments in its case brief

that continue to be relevant to the final results." *Plaintiff's Br.* at 41-42 (citing 19

C.F.R. § 351.309(c)(2)).  However, NTSF argues that Commerce's case brief

regulations do not apply to ministerial errors and that NTSF could not have

identified the error prior to the *Final Results* because that error was unique to the

*Final Results*.  *Plaintiff's Br*. at 46.  NTSF ignores the purpose of Commerce's

regulations and the record.

    *First*, NTSF is wrong that parties may raise any ministerial error under

19 C.F.R. § 351.224, even if it existed in the preliminary results and was not raised

in the parties' case briefs.  As NTSF notes, Commerce's regulations require that

parties include all arguments in their case briefs.  *Plaintiff's Br.* at 41-42 (citing 19

C.F.R. § 351.309(c)(2)).  The reason is that Commerce must be able to address

arguments regarding all previously existing errors in the final results.  Indeed,

Commerce explained when promulgating the ministerial error regulation that errors

present in preliminary results must be addressed in the case briefs precisely

because "{t}he alleged errors, therefore, will be addressed in the final results of

review."  *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296,

27,326-27,327 (Dep't of Commerce May 19, 1997).  Thus, the entire point of the

regulation is to ensure that only errors made by Commerce for the first time in the

final results should be considered ministerial.

*Second*, NTSF is wrong that Commerce made a different alleged error in the *Final Results* than it did in the *Preliminary Results*.  NTSF cites to Commerce's narrative summary describing generally the movement expenses deducted from NTSF's U.S. prices, and claims that this narrative summary makes "apparent that Commerce meant to include the other U.S. movement expenses reported in the USOTHTRU, and <u>not</u> the USOTHTR2U field."  *Plaintiff's Br.* at 36 (citing Preliminary Analysis Memorandum at 6, Appx97357) (original emphasis).  Yet, on page 6 of Commerce's Preliminary Analysis Memorandum (the same page cited by NTSF), Commerce includes an excerpt from the SAS program showing its intention to include both movement expense fields – USOTHTRU and USOTHTR2U – in its constructed export price calculation.  Appx97357.  Indeed, a comparison of Commerce's final SAS program and its preliminary SAS program shows that in both programs Commerce [

].  *Compare* Commerce's Preliminary Analysis Memorandum at Attachment 1, Appx97377 *with* Commerce's Final Analysis Memorandum at Attachment 1, Appx102819.  Hence, NTSF's claim that Commerce committed a different alleged error in the *Final Results* than in the *Preliminary Results*, is not supported by the record.

18.

*Third*, NTSF claims that "Commerce articulated no basis for deducting the same expenses reported on two separate bases from NTSF's {constructed export price}." *Plaintiff's Br.* at 51.  However, Commerce had no reason to question both expense fields because, again, NTSF reported them in this manner.  NTSF admits to having reported that these expenses were "random" and "unknown at the time of sale and result mostly from delays related to USDA inspection." *Plaintiff's Br.* at 34, 35.  NTSF also concedes that in a "few" instances its verification exhibits referenced the "'USOTHTRU' field rather than the 'USOTHTR2U' field." *Plaintiff's Br.* at 37, n.11.  Indeed, after the *Preliminary Results*, NTSF included in its case brief both USOTHTRU and USOTHTR2U expense fields in its proposed revision of Commerce's preliminary INTLMOVEU calculation.  NTSF Administrative Case Brief at 3, Appx16983.  Therefore, Commerce had no indication of any alleged error because the record indicated that the expenses included in USOTHTRU and USOTHTR2U fields were distinct, rather than "duplicative." *See* Preliminary Analysis Memorandum at 6, Attachment 1, SAS Log, Line [        ], Appx97357, 97377; Final Analysis Memorandum at 4, Attachment 2, SAS Log, Line [        ], Appx102798, 102819.

Without NTSF removing one field from its sales databases or arguing for the use of one or the other in its case brief after Commerce used both of them in its *Preliminary Results*, Commerce could not have known NTSF made an error in its

19.

reporting.  Indeed, that this alleged error originated from NTSF's reporting is an independent reason for rejecting NTSF's ministerial error allegation because that regulation applies only to errors made by Commerce, not respondent parties. *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27296, 27,327 (Dep't of Commerce May 19, 1997) ("The provisions of § 351.224…only apply to ministerial errors, as defined in paragraphs (f) and (g), and, hence, only to errors made by the Department.  Errors made by respondents in their submissions to the Department…are not governed by the provisions of § 351.224.").

*Finally*, Commerce's rejection is also consistent with its practice in the immediately preceding review where NTSF argued that a ministerial error identified by CFA was untimely for this same reason.  CFA's Reply to NTSF's Ministerial Error Allegation at 5, Attachment 2, Appx17360, 17378 (where Commerce similarly found that "{t}he alleged mistake was discoverable earlier in the proceeding (*i.e.*, the preliminary results) but was not pointed out to Commerce during the time period specified by regulation.  The ministerial process is not an opportunity to submit allegations on an alleged error that is not ministerial and was present in the preliminary results").  There is no relevant difference between the ministerial error issue in the previous segment of the proceeding and the instant one, and it would have been arbitrary for Commerce to act differently.  *See, e.g., Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003); *SKF*

*USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001); *Pakfood Pub. Co. v. United States*, 724 F. Supp. 2d 1327, 1335 (Ct. Int'l Trade 2010); *Nakornthai Strip Mill Pub. Co. v. United States*, 587 F. Supp. 2d 1303, 1307 (Ct. Int'l Trade 2008).

III.   CONCLUSION

For the foregoing reasons, the Catfish Farmers of America, *et al*., respectfully request that this Court reject NTSF's arguments.

Respectfully submitted,

/s/ Jonathan M. Zielinski

Jonathan M. Zielinski
James R. Cannon, Jr.
CASSIDY LEVY KENT (USA) LLP
900 19th Street NW, Suite 400
Washington, DC 20006
T: (202) 787-5507
F: (202) 567-2301
E-mail:  jzielinski@cassidylevy.com

*Counsel to the Catfish Farmers of America, et al.*

Dated:  April 12, 2021

NON-CONFIDENTIAL VERSION

<u>Certificate of Compliance with Chambers Procedures 2(B)(1)</u>

The undersigned hereby certifies that the foregoing brief contains 4,285 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 14,000 word count limitation set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

By:   <u>/s/ Jonathan M. Zielinski</u>
Jonathan M. Zielinski